**TEXACO, INC., et al., Appellants,**

**v.**

**Hobert DEBUSK et al., Appellees.**

Court of Appeals of Kentucky.

June 13, 1969.

Rehearing Denied Sept. 26, 1969.

---

J. K. Wells, Paintsville, Edward A. Marye, Jr., Clay & Marye, Mt. Sterling, for appellants.

J. Blaine Nickell, Ralph N. Walter, Nickell & Walter, West Liberty, for appellees.

DAVIS, Commissioner.

A fire destroyed a store and garage building owned by Hobert Debusk and his

wife, who sued Texaco, Inc., and Pat Bonfield, alleging that the fire and consequent damages resulted from negligence of Texaco and Bonfield. The Debusks obtained verdict and judgment in the sum of $9,900, and Texaco and Bonfield appeal.

Texaco presents two bases for reversal: (1) Texaco was released from all liability by reason of an exoneration clause in the service station equipment lease; and (2) the evidence was insufficient to create a jury issue as to the cause of the fire.

In addition to the grounds presented by Texaco, Bonfield asserts three other assignments of error: (1) The evidence did not warrant the court's submission to the jury of the question of oral modification of the exoneration clause; (2) Bonfield was not liable in any event; and (3) the Debusks were contributorily negligent.

On June 18, 1965, a fire destroyed a building owned by the Debusks situated on the north side of U. S. 460 at Ezel in Morgan County. Debusk operated a service station at the site of the fire for which gasoline and other products were furnished by Bonfield as a distributor for Texaco. Two 1,000-gallon underground gasoline storage tanks had been installed in 1956. These tanks belonged to Texaco, but Bonfield made the arrangements for their installation. There were two gasoline pumps situated on a concrete island within a foot or two of the front wall of Debusk's building. These pumps and all appurtenances also belonged to Texaco.

In November 1964, gasoline was noted in a well owned by Homer Patrick. Patrick also operated a small rural service station, using Sinclair products, situated about 200 feet downgrade from the Debusk station. The presence of the gasoline in the Patrick well was made known to Bonfield's delivery truck driver, and some investigation of the situation was made by employees of Bonfield. Acting upon the suggestion of a superior Texaco officer, some of Bonfield's employees performed a "stick" test in which the level of the gasoline in the tanks was gauged on a stick inserted for that purpose at certain intervals with a view to learning whether any unexplained disappearance of gasoline had occurred. The results of the tests were negative for gasoline leakage. There was evidence that Patrick had caused Sinclair to make an air-pressure test at Patrick's station and that no leakage was detected following that test.

There was considerable testimony in behalf of the appellees indicating an abnormally high presence of the odor of gasoline fumes both inside and outside the service station. There was some countervailing evidence on this point offered in behalf of the appellants. Appellees testified that they called to the attention of Bonfield's drivers the abnormal presence of the odor of gasoline on several occasions and urged that steps be taken to rectify the condition. Hobert Debusk and his brother were alone in the service station portion of the building on the day of the fire and heard the sound of an explosion which occurred in the grocery store portion of the building. The explosion was accompanied and followed by the consuming fire. No one was in the grocery at the time of the explosion and fire. It is the theory of the appellees that the explosion and fire were proximately caused by the leakage of gasoline with its attendant dangerous fumes brought about through the negligence of Bonfield and Texaco in failing to properly maintain the equipment at the service station.

At or about the time Debusk entered into his initial arrangement to become a service station operator dealing in Texaco products, he signed a document styled "Customer's Equipment Lease" by the terms of which it was provided that the customer (Debusk) should:

"Exonerate the Company and hold it harmless from all claims, suits and liabilities, whatsoever their nature, and howsoever they may arise, whether from the installation, maintenance, existence, or use of such equipment, or otherwise; at

his expense keep said equipment in good order and repair. In the event, however, that repairs are made to said equipment by the Company gratuitously and at the request of the Customer, Customer hereby assumes full responsibility for, and agrees to hold the Company harmless from all loss or damage sustained by Customer or by third parties by reason of or resulting from said repairs."

Citing Cobb v. Gulf Refining Company, 284 Ky. 523, 145 S.W.2d 96, Texaco and Bonfield insist that the just-quoted exoneration clause is a complete bar to any recovery by the appellees. On the other hand, the appellees maintain that there was a rescission or modification of that exoneration clause, thus eliminating it as a defensive weapon for the appellants. The basis of the claimed rescission or modification is testimony for appellees that specific instructions were given by Bonfield to Debusk that Debusk should not undertake any repair or maintenance service of any of the equipment, coupled with the claim that Bonfield assured Debusk that repairs and maintenance would be performed by Bonfield for Texaco and paid for by Texaco. Bonfield and Texaco's officer testified that it was "company policy" for such repairs to be performed in behalf of Texaco incident to requisitions for such repairs by distributors such as Bonfield. Throughout the years, all repairs and maintenance were performed for Texaco through Bonfield at Debusk's station.

■ The trial court instructed the jury to find for Texaco and Bonfield unless it believed from the evidence that the customer's equipment lease was cancelled or abandoned by mutual agreement by the contracting parties. The appellants contend that there was not sufficient evidence of rescission or abandonment to warrant such an instruction. In our view the conduct of the parties and the admitted "company policy" considered with the showing that all repairs had been made through Bonfield and paid for by Texaco raised a submissible issue which the court properly

presented to the jury in the instruction just mentioned.

In 17 Am.Jur.2d, Contracts, Section 494, it is written in part:

"A contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract, and mutual assent to abandon a contract may be inferred from the attendant circumstances and conduct of the parties. There is authority to the effect that even a contract under seal may be released, surrendered, or discharged by matters in pais.

"While as a general rule a contract will be treated as abandoned or rescinded where the acts and conduct of one party inconsistent with its existence are acquiesced in by the other party, to be sufficient the acts and conduct must be positive and unequivocal."

In Dalton v. Mullins, Ky., 293 S.W.2d 470, 475, this court recognized the principle that a written contract can be modified or abandoned by a subsequent oral agreement, pointing out that the proof to support such an assertion must be "clear and convincing." Our review of the evidence touching this point convinces us that the evidence supporting the theory of rescission or modification was sufficient to meet that standard. Hence, we regard as without merit Bonfield's contention that the court erred in submitting to the jury the issue as to modification of the exoneration agreement. We do not express any opinion as to whether the exoneration clause was unenforceable as being against public policy.

■ Both of the appellants insist that the evidence was insufficient to warrant submission to a jury on the question of causation of the fire. In support of this point, our attention is directed to a series of fire cases, some of which are McAtee v. Holland Furnace Company, Ky., 252 S.W.2d 427; Smith v. Kentucky-West Virginia Power Company, Ky., 283 S.W.2d

376; and American Insurance Company v. Horton, Ky., 401 S.W.2d 758. In the cited cases we recognized the accepted premise that verdicts may not rest upon speculation or surmise. We adhere to that principle but do not regard it as dispositive of the question at hand.

■ In Kentucky Power Company v. Halcomb, Ky., 373 S.W.2d 725, we pointed out four factors which had been presented by the plaintiffs and which we regarded as sufficient to sustain a verdict in their favor. Those factors were (1) an observed potentially dangerous condition existing before the fire; (2) notice to the defendant of such condition; (3) an identification of the source of the fire in the immediate area thereof; and (4) credible evidence of a short circuit in the line which could have been caused by the condition. In Halcomb, we observed: "Each case must be resolved in the light of the particular circumstances shown." Id. 373 S.W.2d 726. Of course, the case before us does not involve the fourth factor mentioned in Halcomb, but the evidence reveals that the other three factors set out in Halcomb are present here. As noted in Collett v. Taylor, Ky., 383 S.W.2d 692, 695: "The weight and value of evidence is tested in terms of likelihood, or reasonable probability." The same principle was observed in Klingenfus v. Dunaway, Ky., 402 S.W.2d 844, in which we noted that a mere reasonable *possibility* is insufficient to provide an inference that an accident *probably* so happened to the exclusion of other reasonable possibilities.

■ The evidence disclosed the following circumstances which we regard as sufficient to warrant the jury's inference that the fire was caused through the negligence of Texaco and Bonfield in the maintenance of the gasoline equipment: the unexplained presence of gasoline in the Patrick well situated about 60 feet downgrade from the Debusk property; the persistence of the abnormal and unexplained presence of the odor of gasoline fumes; the explosive origin of the fire, characteristic of a gasoline fume ignition; and the absence of any other reasonable probability of the fire's origin. No combustible material was kept in the grocery where the explosion occurred.

It should be observed that the two Texaco underground tanks were not exhumed until February following the fire in June. Tests performed at Texaco's behest disclosed no leak in either tank. The service pipeline connecting the pumps with the underground tanks was never tested, although gasoline was observed to be in the service line at the time the tanks were dug up in February.

■ Bonfield contends that in no event could any liability attach to him since he had no duty to maintain or repair any of the equipment and there was no showing of an agency relationship between him and Texaco. This argument is without merit, because the evidence clearly shows that Bonfield actively held himself out to be the agent of Texaco in the matter of repairing and maintaining the equipment and that he carried out "company policy" by instructing Debusk not to undertake any repair or maintenance of the equipment and directing him to submit all requests of that nature to Bonfield. Other testimony showed that Bonfield had advised Texaco of Debusk's complaint about the odor of gasoline fumes and had carried out Texaco's directions to perform stick tests. In these circumstances Bonfield clearly was acting as Texaco's agent with the full knowledge and consent of Texaco. It follows that there is no inconsistency in the verdict which imposed liability on Bonfield and Texaco jointly and severally.

■ By a proper instruction the trial court submitted the question of contributory negligence of appellees to the jury. The jury resolved that issue in favor of appellees. Bonfield contends that appellees were guilty of contributory negligence as a matter of law by their failure to take measures to protect their property, citing Jeffrey v. Ray, Ky., 406 S.W.2d 838, and

Smith v. Hensley, Ky., 354 S.W.2d 744, 98 A.L.R.2d 340. We are unable to perceive how Bonfield may have comfort in either of the cases he cites. In Jeffrey, the question dealt with was whether a passenger was contributorily negligent in continuing to ride with a drinking driver. In Smith, the issue of contributory negligence in a gasoline fire case was submitted to a jury, and the court did not rule that the plaintiff was contributorily negligent as a matter of law. It would be anomalous to hold as a matter of law that the appellees were contributorily negligent in face of the assurances of Bonfield's employees that no source of gasoline fumes was detected.

The judgment is affirmed.

MONTGOMERY, C. J., and EDWARD P. HILL, MILLIKEN, PALMORE, REED and STEINFELD, JJ., concur.