**MITSUI O. S. K. LINES, K. K.,**
**Plaintiff-Appellee,**

v.

**HORTON & HORTON, INC.,**
**Defendant-Appellant.**

**No. 72–3104.**

United States Court of Appeals,
Fifth Circuit.

June 21, 1973.

Robert Eikel, Houston, Tex., for defendant-appellant.

Frank E. Caton, Houston, Tex., for plaintiff-appellee.

Before BELL, GOLDBERG and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Shortly after noon of November 28, 1970 the Kasugasan Maru (ship), a 492-foot general cargo vessel of 8500 gross tons owned by plaintiff-appellee Mitsui O.S.K. Lines, K.K., a Japanese corporation (Mitsui) was proceeding outbound to the Gulf of Mexico in the Houston Ship Channel to seaward of Beacons 75 and 76, near "Five-Mile-Cut", where the channel traverses the open waters of Galveston Bay. The ship was loaded light with a draft aft of about 20 feet. Her beam was 62 feet, visibility was good, the wind and weather normal. Approaching inbound was the barge H & H 130 (barge) closely coupled to and being pushed ahead by the tug Sallie Sewall (tug). Both tug and barge were owned and operated by the defendant-appellant-cross-claimant, Horton & Horton, Inc. (Horton). The barge was 240 feet long, 45 feet wide and ten feet in depth. The tug was approximately 59 gross tons.

In attempting a port-to-port passing, the ship and barge collided in the channel. The exact point of collision was in dispute, both in reference to the center line of the 400-foot channel and as to proximity to a 15° curve left (outbound) in the channel.

The trial was bifurcated as to liability and damages. Upon evidence fully supporting such a result, the court below made oral findings following the liability phase of the trial that the sole proximate cause of the collision was the negligence of the crew of the tug: in failing to keep a proper lookout, in failing to take affirmative action to avoid collision, in failing to heed warning signals from the ship, and in failing to maintain the tug's starboard side of the channel, either because of trouble with the tug's steering mechanism or because of having an inept and inexperienced captain at her helm. After the entry of oral findings of fact and conclusions of law as to liability, and pending the hearing on damages, the district court denied Horton's motion to reopen the evidence as to liability to permit consideration of further evidence pertaining to a large piece of metal sheared from the port side of the barge in the collision. Horton proffered that this evidence would exactly locate the point in the channel where the collision occurred. The district court's refusal to reopen the case and consider this evidence was based *inter alia*, upon a determination that the proffered evidence would not alter its conclusions as to liability already reached. We agree with that holding.

It is a uniform rule that the granting or denial of a motion to reopen proceedings for newly discovered evidence rests within the sound discretion of the trial court, that the review of such a decision is limited to search for an abuse of discretion, and that the moving party must show that the proffered evidence would not be merely cumulative. United States v. Jacquillon, 5 Cir. 1972, 469 F.2d 380, 388; United States v. 41 Cases, More or Less, 5 Cir. 1970, 420 F.2d 1126, 1132; Chemical Delinting Co. v. Jackson, 5 Cir. 1951, 193 F.2d 123, 127. The evidence proffered here was in fact cumulative as it merely confirmed what the district court had previously found, *viz.*, that the collision occurred on the west (the ship's starboard) side of the center line of the channel in the ship's lane of traffic.[1]

Defendant did not make a convincing showing that the proffered evidence

---

1. Despite a fine spun theoretical argument as to its showing that the collision occurred on the east (the tug's starboard) side of the center of the channel, the metal from the barge was salved at a point on the bottom of the channel 80' west of the 400' channel center line. Its location was known at the time of the trial as to liability, although it had not been salved.

would exonerate it from liability or was otherwise inconsistent with the determination of the trial court. Indeed, taking the record as a whole, including the proffered evidence, the evidence amply supports the trial court's findings of causative negligence by the crew of the tug. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.

Horton also questions the sufficiency of Mitsui's proof as to damages. The district court awarded Mitsui damages in the amount of $23,857.14 for repairs to the ship and for lay-up time. Much of the confusion is caused by the fact that the repairs to the ship were not undertaken until a year after the collision when the ship was undergoing its annual survey or dry docking in Japan. This meant that the damages caused by the collision had to be apportioned from the costs incurred as the result of the routine annual survey.

■■ Damages need not be proved with an exact degree of specificity. It suffices if a state of facts is shown from which a court or jury can find with reasonable certainty that the damages claimed were actually or may be reasonably inferred to have been incurred as a result of the collision. Our standard of review of factual findings of this sort is the "clearly erroneous rule" of McAllister v. United States, supra; Cates v. United States, 5 Cir. 1971, 451 F.2d 411, 416–417; Theodories v. Hercules Navigation Co., 5 Cir. 1971, 448 F.2d 701, 704; F.R.Civ.P. Rule 52(a). Nevertheless "[t]he damages must not be merely speculative, and something else must be shown than the simple fact that the vessel was laid up for repairs." The Conqueror, 1898, 166 U.S. 110, 127, 17 S.Ct. 510, 517, 41 L.Ed. 937, 945.

■ The surveyor who examined the ship testified that the repairs undertaken in the Japanese shipyard were of a type and kind which could be expected to be necessitated by damages from the collision described by the ship's witnesses. Representatives of the Japanese shipyard which did the work testified as to the costs of repair. The surveyor also gave expert testimony based on his experience that three days was the average time required for an annual dry docking of a vessel of the Kasugasan Maru's class. Since the dry docking required six days in all it was his opinion that the additional three days was necessary to make repairs of the collision damage to the ship. Because there was no way to differentiate specifically between those expenses attributable solely to dry docking and those expenses attributable solely to the collision repairs, the accessorial charges were divided on an equal basis. Such evidence is sufficient for a court or jury to find legitimately that such were the actual damages as a result of the collision, F.R. Civ.P. 52(a), and to this extent the award of damages is affirmed.

However, the district court granted plaintiff approximately $6,500 as part of the damage award for the general operating costs and services for the ship for three of the six days or one-half of the repair period. This award was based solely upon the surveyor's estimate of operating costs and services. Later on cross-examination he conceded that this was a determination beyond his specialized knowledge. This evidence standing alone as it did was an insufficient basis for the operating costs and services portion of the damages award. See *The Conqueror*, supra, 166 U.S. at 130–131, 17 S.Ct. at 518, 41 L.Ed. at 946–947. This portion of the award resting as it does not on competent testimony but upon no more than surmise and conjecture cannot be permitted to stand. Ove Skou v. United States, 5 Cir., 1973, 478 F.2d 343 (decided May 17, 1973); The Nicolaou Maria, 5 Cir. 1944, 143 F.2d 406.

The judgment of the lower court is modified to eliminate this amount of $6,500, reducing the judgment for damages to the sum of $17,357.14. As so modified, the judgment below is in all other respects affirmed.

Modified and affirmed.