Mrs. Menetta G. NEAL, as Administratrix of the Estate of Wallace C. Neal, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 75–3922.

United States Court of Appeals, Fifth Circuit.

Nov. 3, 1977.

Rehearing Denied Jan. 16, 1978.

Unit, Torts Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Albert W. Stubbs, Richard Y. Bradley, Columbus, Ga., Glover McGhee, G. Michael Hartley, Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE, MORGAN, and HILL, Circuit Judges.

MORGAN, Circuit Judge:

Menetta G. Neal, representing the estate of her deceased husband, Wallace C. Neal, brought this action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346 (1976), seeking to recover damages for fatal injuries to her husband allegedly caused by the negligence of air traffic controllers, employees of the defendant, the United States. Defendant appeals from a verdict awarding plaintiff damages in the amount of $536,-222.95.

The trial judge in this non-jury trial made the following findings of fact. The decedent Wallace C. Neal, and his copilot, also deceased, were flying from Columbus, Georgia to Lexington, Kentucky, in a jet airplane [hereinafter referred to by its FAA Registration Number, N100RC], owned by their employer. Both were killed when N100RC crashed following an encounter with wake turbulence generated by Southern Airlines Flight 930 [hereinafter SO930], the plane which landed immediately prior to N100RC's approach. An encounter with the turbulence created by SO930 was made possible by the failure of the Air Traffic Control personnel to maintain sufficient separation between the two aircraft and by their failure to issue a wake turbulence caution to N100RC. Defendant challenges the finding of a wake turbulence encounter, the finding of negligence by the air traffic controllers, the finding of no contributory negligence by Neal, and the amount of the award.

Ronald T. Knight, U. S. Atty., Macon, Ga., William Kanter, Rex E. Lee, Asst. Atty. Gen., Mark A. Dombroff, Aviation

The most difficult question raised in this appeal concerns the finding that N100RC

encountered the wake turbulence of SO930. The difficulty is caused by the lack of physical evidence concerning the crash and the uncertainty of the behavior of wake turbulence or, more precisely, wing-tip vortices. This particular type of turbulence is caused by the uneven flow of air around the wings and flaps of airplanes and can be quite dangerous to smaller planes. For a complete explanation of wing-tip vortices, see *Dickens v. United States,* 545 F.2d 886, 890 (5th Cir. 1977).

Despite extensive study, the behavior of these vortices cannot be predicted with certainty. At trial defendant presented several expert witnesses who testified about the behavior of wing-tip vortices. Accepting the proposition that the location and duration of wing-tip vortices are generally determined by the existing weather conditions, defendant's witnesses testified that the combined effect of the meteorological factors on the day of the crash would be to push the vortices below and to the side of the point of their original generation along the glide slope of SO930. The slope of SO930 placed it approximately 1045 feet above ground level when it was 3.3 miles from the end of the runway; 600 feet above ground level at 2 miles from the end of the runway; 50 feet above ground level over the end of the runway; and touching the ground 1250 feet beyond the end of the runway. N100RC, following SO930 by one minute and 48 seconds, was to follow the same glide slope. The defendant argues that since the vortices would have moved below and to the side of the glide slope of SO930 during the interval between the two planes, in order for N100RC to have encountered the turbulence, it would have to have been below the glide slope of SO930. Plaintiff, trying to suggest that at some point N100RC was below the glide slope of SO930, attempted to show that a prudent pilot, flying a plane similar to N100RC under the same weather conditions, would have attempted to land as close to the end of the runway as possible and not 1250 feet beyond the end as did SO930.

The two eyewitnesses to the crash are in substantial agreement. They testified that the first time N100RC became visible it was at an approximate altitude of 600 feet above ground level somewhere over the first half of the runway, placing it above the glide slope of SO930, and slightly to the side of the runway. Both testified that they saw the plane roll 240° in a period of three or four seconds, between 60° and 80° per second, placing N100RC in an inverted position from which it never recovered, crashing 2400 feet beyond the approach end of the runway. Several witnesses testified that the rapid roll of N100RC was the type of maneuver that would occur if N100RC had encountered wake turbulence; however, defendant's experts testified that such an encounter would have been highly unlikely considering the relative positions of the aircraft and the existing meteorological conditions. Plaintiff also offered evidence which tended to exclude other possible causes of the accident. Pilots testified that it would have been impossible to cause such a violent roll by maneuvering the controls. Other evidence tended to negate the existence of any meteorological activity which could have caused the crash. Based on the above, the trial court found that N100RC had encountered the wake turbulence generated by SO930. It is this finding which defendant contends is erroneous.

■ Findings of fact by a trial judge sitting without a jury "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.Pro. 52(a). 28 U.S. C.A. Thus this court may not reverse except "(1) where the findings are without substantial evidence to support them; (2) where the court misapprehended the effect of the evidence, and (3) if, though there is evidence which if credible would be substantial, the force and effect of the testimony considered as a whole convinces that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case." *Western Cottonoil Co. v. Hodges,* 218 F.2d 158, 161 (5th Cir. 1955), *Sanders v. Leech,* 158 F.2d 486, 487 (5th Cir.

1946). A careful review of the record leads us to the conclusion that the finding of the trial judge on this point is not clearly erroneous.

In Kentucky, a verdict based on circumstantial evidence must be based on more than mere speculation; however, where the plaintiff has offered evidence "that the facts sought to be proved are true . . . [and which tends] to 'exclud[e] all reasonable conflicting hypotheses'" the verdict is based on sufficient evidence. *United Electric Coal Companies v. Brown*, 354 S.W.2d 502 (Ky.1962); *Huffman v. S. S. Mary & Elizabeth Hospital*, 475 S.W.2d 631 (Ky.1972); *Texaco, Inc. v. Debusk*, 444 S.W.2d 261 (Ky.1969). In the present case, plaintiff's evidence has eliminated other reasonably likely causes, leaving it for the trier of fact to resolve the conflict between the eyewitnesses and defendant's experts. It was not clearly erroneous for the trial court to give more weight to the testimony of the former than to the testimony of the latter.

Defendant's other contentions with respect to the sufficiency of the evidence lack merit for similar reasons. The testimony concerning the respective duties of the air traffic controllers and the pilot of N100RC was conflicting and thus the trial court was free to give more weight to plaintiff's evidence. Since the trial court found that the air traffic controllers negligently failed to take necessary precautions against a wake turbulence encounter and that N100RC in fact encountered the wake turbulence of SO930, defendant's argument that causation was not established is similarly without merit.

Defendant's final contention relates to the calculation of damages. As with all other questions of fact, the amount of damages found by the trial court to have been sustained by a plaintiff is not to be overturned unless clearly erroneous. Fed. R.Civ.Pro. 52(a), 28 U.S.C.A.; *Mitsui O.S.K. Lines, K.K. v. Horton & Horton, Inc.*, 480 F.2d 1104 (5th Cir. 1973). Under the Federal Tort Claims Act, determination of damages is governed by the law of the state in which the wrongful act occurred. 28 U.S.C. § 1346(b); *Hartz v. United States*, 415 F.2d 259 (5th Cir. 1969). Thus, the propriety of the trial court's award must be determined with reference to Kentucky law.

The measure of damages for loss of life in Kentucky is the destruction of the decedent's power to earn money. *Spangler's Administrator v. City of Middlesboro*, 301 Ky. 237, 191 S.W.2d 414 (1945). It is decedent's potential for earning money which must be determined and not just the loss of salary for decedent's employment at the time of death. *Roland v. Beckham*, 408 S.W.2d 628 (Ky.1966). Therefore, wages being earned at the time of death are not determinative, but are merely one factor to be considered. *West Kentucky Coal Co. v. Shoulder's Administrator*, 234 Ky. 427, 28 S.W.2d 479 (1930). Because of the degree of speculation involved, "[u]nder the Kentucky rule of damages a great deal of latitude must be allowed." *Amerco Marketing Co. of Memphis v. Myers*, 494 F.2d 904, 913 (6th Cir. 1974).

Defendant argues that the method used by the trial court in reaching its award was erroneous. The trial court relied primarily on decedent's loss of future earnings reduced to present value, with further reductions for personal expenses of the decedent and income taxes. While we agree that the methods used below do not lend themselves to mathematical precision, it is clear that such precision is not required in Kentucky. *See Humble v. Mountain State Construction Co.*, 441 F.2d 816 (6th Cir. 1971). It is sufficient that the trial court took into consideration the factors which must be considered under Kentucky law. *Hartz v. United States*, 415 F.2d 259 (5th Cir. 1969). Accordingly, this court finds that the damages awarded in this case were not excessive. *See United States v. Becker*, 378 F.2d 319 (9th Cir. 1967). The judgment below is

AFFIRMED.

JAMES C. HILL, Circuit Judge, dissenting.

In order for this court to affirm the award of damages based upon the alleged negligence of the defendant, we must find in the record sufficient evidence to support a finding that the defendant had a duty; that the duty was negligently breached; and that the breach was the proximate cause of the injury. Here, the United States, through its air traffic controllers, owed a duty to the deceased. Breach and causation were in dispute. Pretermitting a resolution of the question of breach, I do not find in the record any sufficient evidence of causation to support the award of damages.

Specifically, there is no evidence that the deceased's aircraft (N100RC) encountered wake turbulence generated by Southern Airlines Flight 930 (SO930). Indeed, the evidence is that, physically, no such encounter could have taken place.

It is undisputed that when N100RC first came into view below the overcast, it was somewhere alongside the approach half of the runway. When it broke through the overcast and became visible to those on the grounds, it was at an altitude of at least 600 feet. At that point, the aircraft appeared to go out of control. Thus, the award of damages must have been based upon a finding that N100RC encountered wake turbulence generated by SO930 when it was 600 feet in the air over the approach half of the runway. The evidence is undisputed that, when SO930 had been within the confines of the first half of the runway, it was no more than 50 feet above the ground and, for most of the approach half of the runway, it was rolling on the ground.

To be sure, the expert testimony touching upon the dispersal of wing-tip vortices includes possibilities of aberrant behavior. Firm and undisputed testimony indicates that these "horizontal tornados" are created at the wing tips of the aircraft and that they tend to descend while moving apart, laterally. Wind conditions and other atmospheric conditions can change this dispersal pattern to some extent. I find in the record no competent evidence upon which a finding could have been made that N100RC could have encountered SO930's vortices at a point 550 feet above the latter aircraft.

The evidence is undisputed that each of the two aircraft were supposed to follow the same glide path to the approach end of the runway. The physical facts make it abundantly clear that N100RC did not follow the glide path assigned. Had it done so, it could not have been 600 feet above the ground when it was over the approach half of the runway. It would have been at a few feet of altitude, measured in tens and not hundreds, when it crossed the threshold and would have been on the runway immediately thereafter. The evidence is silent as to why N100RC failed to fly the prescribed glide path. By failing to fly the prescribed glide path, it is possible that N100RC could have encountered turbulence produced by SO930 at some point. However, such an encounter would have been at a point long before it arrived at the touchdown end of the runway. Had it done so, with the tragic results contended, the encounter would have taken place in the overcast, not visible to the those on the ground.

Viewing the evidence most favorable to plaintiff-appellee, it showed that, for unknown reasons, N100RC did not fly the proper approach glide path for a landing at the airport and that, when it was more than 600 feet above its prescribed altitude, it went out of control and crashed. When the evidence offers no explanation for this sequence of events, the court must look to the rules of law allocating the burden of proof for determination as to which party shall prevail. The burden of proof in this case was upon the plaintiff to prove, by a preponderance of the evidence, that the cause of the crash was the failure of defendant's air traffic controllers to warn N100RC to be alert for the wing tip vortices created by SO930. For such causation to have been shown, the plaintiff was required to show that the crash resulted from an encounter with such vortices. The evidence failed to show this, leaving the cause of the crash a mystery. The plaintiff failed to carry the burden of proof.

In *Dickens v. United States*, 545 F.2d 886 (5th Cir. 1977), a private, twin engine Excalibur aircraft was found by the District Court to have crashed as a result of encountering wake turbulence at an intersection where a commercial jet had previously crossed. The critical issue was whether or not the separation time between the landing aircraft was sufficient to have allowed the wake turbulence to have passed the intersection and thus be of no consequence to the private plane. The Government relied upon recorded tapes in attempting to show that the landings were in fact six minutes apart, a time generally agreed sufficient for the wake turbulence to dissipate. The plaintiffs relied upon eyewitness accounts that the landings were but three minutes apart and thus turbulence was still present and adversely affected the Excalibur's landing. We held that the District Court was entitled under the law to credit the time estimates of the eyewitnesses over the separation time shown by the tape recordings covering the arrival of the two aircraft. Thus, there was evidence to support the trial court's resolution of disputed facts and we affirmed.

Here, I find no genuine dispute in the evidence. If recovery is to be allowed in this case, then it must be concluded that, when any aircraft goes out of control at or near an airport at which another large airplane has recently landed, a finding that the loss of control resulted from wing tip vortices generated by the preceding aircraft would be proper. I cannot go that far. I would reverse.