**Louis KALAVITY, Administrator of the Estate of Dorsie H. Kitchen, Jr., Deceased, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**Nos. 76–2579, 76–2580.**

United States Court of Appeals, Sixth Circuit.

Argued April 12, 1978.

Decided Oct. 10, 1978.

Donald P. Traci, Spangenberg, Shibley, Traci & Lancione, Craig Spangenberg, Cleveland, Ohio, for plaintiff-appellant cross-appellee.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, Morton Hollander, John G. Laughlin, Robert S. Greenspan, Civ. Div., Dept. of Justice, Washington, D. C., for defendant-appellee cross-appellant.

Before KEITH and MERRITT, Circuit Judges, and CECIL, Senior Judge.

MERRITT, Circuit Judge.

Plaintiff's husband was one of sixteen parachutists who drowned in Lake Erie August 27, 1967, as a result of the negligence of a federal air traffic controller at an Ohio airport near Oberlin. The parachutist's next-of-kin successfully established liability against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), in *Freeman v. United States,* 509 F.2d 626 (6th Cir. 1975), and the District Court has now awarded damages in this case in the amount of $250,000 from which award both sides have appealed. The only issues remaining are whether in a suit brought in Ohio under the Federal Tort Claims Act a damage award to decedent's widow for loss of her husband's support should be reduced to take into account (1) the value of the support that decedent's widow has or will receive by virtue of her subsequent remarriage, and (2) the income taxes which would have been paid by decedent. The District Court ruled that the proper measure of damages must be determined by Ohio law and that, while state law clearly prohibits the court from taking into account plaintiff's remarriage, Ohio decisions are ambiguous on the question of income taxes and that the better reasoned decisions of courts in other jurisdictions support the view that taxes should be considered in measuring plaintiff's loss of income. We hold that taxes and remarriage should not be considered in establishing damages.

I

As the District Court ruled, Ohio law has settled the point that a wrongful death

damage award in favor of decedent's spouse may not be reduced because the spouse has remarried and now receives support from another husband. *Helmick v. Netzley,* 12 Ohio Misc. 97, 229 N.E.2d 476 (1967). Counsel for the government contends, however, that while the government is liable under the Tort Claims Act as "a private person . . . in accordance with the law of the place" where the wrong occurred, it "shall not be liable . . . for *punitive* damages." 28 U.S.C. §§ 1346(b), 2674 (emphasis added). Government counsel argues that any award of damages over and above plaintiff's actual loss is "punitive" and that since plaintiff's remarriage entitles her to the support and companionship of her new spouse, she should not be compensated for the continuing loss of the support and affection of her dead husband. To follow state law in this case, the government argues, would undermine the purposes of the Tort Claims Act by allowing recovery for damages not actually suffered.

This argument on the effect of plaintiff's remarriage is farfetched. No court has adopted it. It says, in essence, that a claimant may recover only direct or out-of-pocket losses: everything else is "punitive." The law of damages in tort is made up of a limited number of relatively simple rules and principles that a jury can understand and apply. In order to have a system that can be easily administered, courts often exclude from consideration certain particular facts or uncertain future events in favor of a principle of uniformity.

Damages do not become "punitive" when a court refuses to consider and reduce a wrongful death award because the decedent's spouse is now living with another person who supports her financially and emotionally.[1] It would then have to consider the stability of the present marital or living arrangement, the strength of the relationship, the health of the new husband, the likelihood of death or separation, the amount of money the new partner contributes, the value of his companionship as compared to the deceased husband's. If the survivor is not yet remarried, the court or jury would have to consider her age, appearance and personality, her desire to marry again, and her chances of finding a marriage partner. The court or jury would also have to consider whether the survivor is telling the truth or simply trying to get a larger damage award if she says she will never remarry. Courts do not award "punitive" damages under the Tort Claims Act when they refuse to reduce damages by taking these kinds of considerations into account.

We note also that the purpose of ordinary tort damages, as distinguished from "punitive" damages, is both to compensate and to deter. Tort law mixes these two purposes, compensation and deterrence, when it awards ordinary damages. Tort law may award as customary damages something more than simply out-of-pocket loss, something for deterrence, without spilling over into "punitive" damages awarded solely for the purpose of punishment. This confusion of purpose is clearly illustrated by the fact that, by statute, liability to pay damages for the pain and suffering and loss of earnings of a decedent during his life now survives his death and attaches to his estate while, at common law, the tortfeasor's death terminated his liability and that of his estate. W. Prosser, *Handbook of the Law of Torts* § 126 (4th ed. 1971). In excluding "punitive" damages from the coverage of the Tort Claims Act, we believe that Congress simply prohibited use of a retributive theory of punishment against the government, not a theory of damages which would exclude all customary damages awarded under traditional tort law principles which mix theories of compensation and deterrence together.[2]

1. Damages are "punitive" when awarded separately for the sole purpose of punishing a tortfeasor who inflicted injuries "maliciously or wantonly, and with circumstances of contumely or indignity." *Milwaukee R. R. v. Arms,* 91 U.S. 489, 493, 23 L.Ed. 374 (1875).

2. *See* Morris, *Punitive Damages in Tort Cases,* 44 *Harv.L.Rev.* 1173, 1175, 1182 (1931) (damages are at best a "clumsy device" for repairing injuries and making parties "whole" and "compensatory damages are usually admonitory as well as reparative"); Williams, *The Aims of the*

II

A more difficult issue is presented by the question whether the lower court should consider the taxes which plaintiff's husband would have paid on his future income.

The rule in Ohio is generally thought to be that evidence of taxes is inadmissible. In *Smith v. Pennsylvania R. Co.*, 99 N.E.2d 501, 504 (Ohio App.1950), the Ohio Court of Appeals for the Second Appellate District stated:

> We hold that it is not proper to deduct from the annual income of plaintiff's decedent Federal Income Taxes in determining the amount which the decedent would have contributed to his wife and children had he lived. Such taxes are too speculative to be considered by the jury.

The holding was cited with approval by the Ohio Supreme Court in *Maus v. New York, Chicago & St. Louis R. R.*, 165 Ohio St. 281, 135 N.E.2d 253 (1956) and is supported by two other court of appeals decisions, *Bergfeld v. New York, Chicago & St. Louis R. R.*, 103 Ohio App. 87, 144 N.E.2d 483 (1956) and *Pfister v. City of Cleveland*, 96 Ohio App. 185, 113 N.E.2d 366 (1953).

All these cases involved jury trials, however, and rest on the argument that the amount of taxes which would have been paid is too speculative and confusing and generally beyond the competence of the jurors to determine. As the court said in *Pfister*:

> Technically, it would seem that compensation for loss of wages should be taxable, but where a verdict is general, there is no way of determining the amount apportionable to wages, so that the entire verdict in practice becomes tax free. Perhaps for absolute exactitude and justice, the jury should be so told and instructed to make an allowance in its general verdict for such item, but the formula for determining such tax element is so complicated that an instruction with respect to it would be most confusing to the jury and at best most difficult of ascertainment. As a practical solution, therefor, [sic] the tax factor is ignored by the trial court in charging the jury.

113 N.E.2d at 368.

These arguments are also applicable, although with considerably less force, to bench trials, see *Downs v. United States*, 522 F.2d 990, 1005 (6th Cir. 1975), but apparently no Ohio court has ruled on the issue of whether taxes should be considered in those circumstances.

■ Where state law is silent or federal law controls, this circuit has adopted the view of several other courts of appeal that "no adjustment for income tax need be made 'at the lower or middle reach of the income scale.'" *Petition of United States Steel Corp.*, 436 F.2d 1256, 1274 (6th Cir. 1970), *quoting McWeeney v. New York, New Haven & Hartford R. R.*, 282 F.2d 34 (2nd Cir.), *cert. denied*, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960). *See LeRoy v. Sabena Belgian World Airlines*, 344 F.2d 266, 276 (2nd Cir. 1965). *See also Johnson v. Penrod Drilling Co.*, 510 F.2d 234 (5th Cir. 1975) (en banc); *Blue v. Western Railway of Alabama*, 469 F.2d 487 (5th Cir. 1972), *cert. denied*, 410 U.S. 956, 93 S.Ct. 1422, 35 L.Ed.2d 688 (1973); *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245 (3rd Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971); *Cox v. Northwest Airlines, Inc.*, 379 F.2d 893 (7th Cir. 1967); *Boston & Maine R. R. v. Talbert*, 360 F.2d 286 (1st Cir. 1966); *United States v. Sommers*, 351 F.2d 354 (10th Cir. 1965).

As explained by the Reporter for the American Law Institute's proposed revision of the *Restatement of Torts*, Explanatory Notes § 914A, comment b at 136 (Tent. Draft No. 17, 1973) (now adopted as a part of the *Restatement (Second) of Torts* but not yet published):

> First, the decision not to tax the earnings was made for the benefit of the injured party. To reduce the damage award because of this is to pass that benefit on to

*Law of Torts*, 4 *Current Legis. Prob.* 137 (1951). ("It is commonly said that the civil action for damages aims at compensation, as opposed to the criminal prosecution which aims at punishment. This, however, does not look below the surface of things.")

the tortfeasor. (See § 920A). Second, the calculation of the potential income tax for future earnings is unduly complicated and fraught with too many imponderables such as the potential number of exemptions or exclusions [tax shelter, etc.] and the uncertainty as to the tax rate in the future. Finally, there are other, countervailing, factors, such as potential future depreciation of the dollar and the unavailability of compensation for counsel fees, which prevent the estimation in terms of gross earnings from working out unfairly *in cases involving average incomes.* These reasons all conduce toward a simple position that no reduction need be calculated for the absence of income taxes, and this is the position taken in this Section *for ordinary cases* involving loss of future earnings. (Emphasis added.)

The Government relies principally on one recent, well-reasoned case involving a claim for damages under the Federal Tort Claims Act in which the Court of Appeals for the Ninth Circuit thoroughly reviewed the legislative history and intent of the Act and concluded that, as a matter of federal law, income taxes should be deducted in that case where the projected incomes of the decedents ranged between $30,000 to $125,000 per year. *Felder v. United States,* 543 F.2d 657 (9th Cir. 1976). The *Felder* court, however, found no inconsistency between its holding in that case that taxes should be deducted and the same court's holdings that taxes need not be deducted in cases involving average incomes.

Decedents' estimated income in the instant case is well within our own "lower or middle reach of the income scale" standard. At the time of his death in 1967, he was earning approximately $6,600 per year and, at the time of trial, would have likely been earning about $12,800 a year.

Following what appears to be the rule in Ohio, our own opinion in *Petition of United States Steel Corp., supra,* and the reasoning of the *Restatement,* we therefore hold that the district court erred in deducting income taxes from decedent's future earning capacity in determining the amount of damages due plaintiff.

The decision below is therefore affirmed in part, vacated in part, and remanded to the District Court for further proceedings consistent with this opinion.