William **FLANNERY**, Committee for Michael George **FLANNERY**, Appellee,

v.

**UNITED STATES of America,**
Appellant.

No. 80–1563.

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1983.

Decided Sept. 21, 1983.

Rehearing and Rehearing En Banc
Denied Dec. 27, 1983.

Marc Johnston, Civ.Div., Dept. of Justice, Washington, D.C., (Alice Daniel, Asst. Atty. Gen., Washington, D.C., Robert B. King, U.S. Atty., Charleston, W.Va., Anthony J. Steinmeyer, Civ.Div., Dept. of Justice, Washington, D.C., on brief), for appellant.

Ray L. Hampton, II, Huntington, W.Va. (Lafe C. Chafin, Barrett, Chafin, Lowry & Hampton, Huntington, W.Va., on brief), for appellee.

Before WINTER, Chief Judge, HALL, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

The plaintiff, a twenty-two year old young man, became permanently comatose as a result of extensive brain damage suffered in an automobile accident later determined to have been caused by the negligence of the driver of the other vehicle who was a federal employee on official business. After a trial of this action, brought under the Federal Tort Claims Act, the court awarded damages of approximately $2,200,-000 consisting of $48,174.80 for medical expenses incurred before trial, $316,984 for future medical expenses, $535,855 for impairment of earning capacity, and $1,300,-000 for "loss of the ability to enjoy life."

On appeal, the United States does not question the determination of its substantive liability. It does question the calculation of damages.

## I.

When the case first came before us, we perceived the questions presented as principally to be determined as a matter of state law. There was a recently enacted statute in West Virginia authorizing the Supreme Court of Appeals of that state to accept and answer questions of West Virginia law certified to it by a federal court. We certified the two principal questions to the Supreme Court of Appeals of West Virginia without appreciating at the time that federal questions lurked in the case, 649 F.2d 270. The West Virginia Supreme Court of Appeals gave us a prompt response, holding that, as a matter of state law, the damages for loss of capacity to enjoy life were properly allowed notwithstanding the fact that the plaintiff has no awareness of his loss, and that no deduction of federal income taxes should be made in calculating the amount of loss of future earnings. *Flannery v. United States*, 297 S.E.2d 433 (W.Va.1982).

We should have first addressed the federal questions lurking in the case. We would have done so except, at the time, we failed to appreciate their presence.

## II.

Under 28 U.S.C. § 2674 of the Tort Claims Act, damages generally are determinable under state law, for the United States is to be held liable "to the same extent as a private individual under like circumstances." But there is a qualification, the relevance and importance of which is now clearly apparent. Punitive damages are not allowable. The Federal Tort Claims Act is a waiver of immunity from suit of the United States, and conditions attached to the waiver must be strictly enforced. The government's immunity is waived insofar as compensatory damages may be determined and awarded. The door for the assertion of private tort claims in federal courts is opened that far, but then the question arises about the allowability of damages treated and labeled under state law as "compensatory" which are in excess of those necessary to provide compensation for injuries and losses actually sustained.

The question of the allowance of such damages is one of federal law. What is compensatory and what is punitive, within the meaning of the statute, is related directly to the extent of the waiver of sovereign immunity. How widely the Congress intended to open the door is not a matter to be resolved under the widely varying laws of the fifty states, but under a uniform standard. Thus, as was said in *D'Ambra v. United States*, 481 F.2d 14 (1st Cir.1973), a state's statutory measure of damages "must be judged not by its language or the state's characterization, but by its consequences."

*D'Ambra* was a wrongful death action for the death of a child in Rhode Island. The Rhode Island statute provided an award to the decedent's parents of an amount computed in terms of the economic loss to the decedent. That bore no relation to the actual loss suffered by the parents. Since damages under the Rhode Island statute were not to be determined by an assessment of the loss suffered by the survivors, a damage award under the statute was held

to be punitive and impermissible under the FTCA.

Similarly, it has now been repeatedly held that federal income taxes must be deducted in computing lost future earnings, notwithstanding the fact that such deductions are not permitted under state law. *Harden v. United States,* 688 F.2d 1025 (5th Cir.1982); *Felder v. United States,* 543 F.2d 657 (9th Cir.1976); *Hartz v. United States,* 415 F.2d 259 (5th Cir.1969). A living person, with earnings subject to federal taxation, may spend only his net income after taxes, and an award to a plaintiff for lost future earnings based upon lost gross earnings gives the plaintiff more than is truly compensatory. As the court pointed out in *Felder,* the punitive nature of the award based upon a computation of lost gross earnings is particularly apparent when the defendant is the taxing authority.

■ The FTCA's proscription of awards of punitive damages authorizes only those awards that compensate or reimburse, or provide recompense or redress for injuries suffered by the claimant. To the extent that an award gives more than the actual loss suffered by the claimant, it is "punitive" whether or not it carries with it the deterrent and punishing attributes typically associated with the word "punitive."

### III.

■ There is no doubt that Flannery has lost "his capacity to enjoy life." He is conscious of nothing and incapable of enjoying anything. In his condition, he is quite susceptible to infections, but with proper care he may have a life expectancy of as much as thirty years from the date of his injury. There is no likelihood whatever that he will ever become aware of anything.

The Supreme Court of Appeals of West Virginia held that, as a matter of state law, damages for the loss of the capacity to enjoy life were assessable upon an objective basis, and it did not matter that this particular plaintiff is unaware of his loss. It is perfectly clear, however, that an award of $1,300,000 for the loss of enjoyment of life cannot provide him with any consolation or ease any burden resting upon him. The award of the cost of future medical care provides for his maintenance as well as his nursing and professional care. It provides all of the money needed for the plaintiff's care, should he live out his life expectancy. He cannot use the $1,300,000. He cannot spend it upon necessities or pleasures. He cannot experience the pleasure of giving it away. If paid, the money would be invested and the income accumulated until Flannery's death, when it would be distributed to those surviving relatives of his entitled to inherit from him. If it is compensatory in part to any one, it is compensatory to those relatives who will survive him.

Since the award of $1,300,000 can provide Flannery with no direct benefit, the award is punitive and not allowable under the FTCA.

### IV.

■ We have already adverted to the decisions holding that federal income taxes must be deducted in computing lost future earnings, at least when the earnings are substantial. They are entirely consistent with the holding of the Supreme Court that such an adjustment must be made in a wrongful death action brought under the Federal Employers Liability Act, *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980); *see also Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). They are consistent with other cases requiring such deductions in actions brought under the Longshoremen's and Harbor Workers' Compensation Act and admiralty cases. *Fanetti v. Hellenic Lines, Ltd.,* 678 F.2d 424 (2d Cir.1982), *Sauers v. Alaska Barge,* 600 F.2d 238 (9th Cir.1979). As the Supreme Court observed in *Jones & Laughlin Steel Corp. v. Pfeifer,* —— U.S. ——, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), "Since the damage award is tax-free, the relevant stream is ideally of *after-tax* wages and benefits." (Emphasis in original).

The lost earnings projections employed generous figures. Flannery had been attending college for three years, but he had completed so few courses he was ranked only as a sophomore. On the afternoon preceding the evening when he was so tragically injured, he had earned $16 working in a filling station, and that constituted his complete employment history. Nevertheless, the projections accepted by the district judge were that he would earn from $17,481 in 1978 to $182,795 in 2017, plus about 35% of those figures in fringe benefits and "supplemental income." [1]

The United States has requested an adjustment for income taxes on the basis of a flat 10% deduction. That is a very conservative estimate. On the basis of current tax tables, a single taxpayer earning $17,481 a year would pay more than that. One earning over $182,000 would have a current tax liability of over 40%. Discounting at the flat rate of 10%, however, has the virtue of simplicity. Since the United States requested no more, we think its suggestion should be accepted.

### V.

The plaintiff contends that if an adjustment is made for income taxes upon estimated future earnings, an adjustment should be made for the income taxes payable on income on invested funds after the judgment is paid. We reject the contention, for it is unknown how the fiduciary who will handle the funds will invest them. It could invest them in whole or in part in tax exempt securities. We find no basis for an adjustment for a tax liability which is avoidable and may never be incurred.

### VI.

Except for the tax adjustment it seeks, the United States does not question the award for lost future earnings. In many cases, such an award is clearly compensatory and useful to provide for a claimant's subsistence and that of his dependents. A question arises in this case, however, for the

judgment already requires the United States to pay a sum calculated to provide for the plaintiff's living expenses throughout the remainder of his life, should he live out his life expectancy.

The question has not been raised by the United States, but we feel compelled to reduce the award for lost earnings because, in part, it duplicates the award of future medical expenses.

An award of lost earnings is made to an incapacitated plaintiff so that he may provide for himself and his dependents those necessities, comforts and niceties he would have provided out of his earned income had he not been injured. In an FTCA wrongful death action, the survivors are entitled to an award based upon lost future earnings of the decedent only after a deduction of the decedent's estimated living expenses, for the survivors are entitled to no greater benefit than they would have enjoyed had the decedent lived and continued working. *Hartz v. United States*, 415 F.2d 259 (5th Cir.1969). A successful plaintiff is entitled to be made as financially secure as he would have been had there been no injury or death, but no more.

In the usual case, a living plaintiff must pay his own living expenses, though an award for lost earnings may be the source of his funds. In this case, however, the plaintiff will be required to pay nothing, for the award of future medical expenses includes all of the personal expense that the plaintiff will incur. Indeed, the testimony was that, in the future, he will need little skilled medical care. His personal expenses will be to provide himself with housing, food, and nursing and custodial care of the kind provided in a nursing home. That is the expense covered by the award for future medical expense. The label should not be permitted to mislead us, for, in truth, the judgment requires the United States to pay the plaintiff's personal living expenses twice. Thus, the award for lost earnings, as finally determined, should be reduced by

1. The very large figures for later years were properly discounted for an increasing likelihood that he would not have remained in employment so long.

the amount of the award for future medical expenses.

## VII.

The judgment is vacated and the case remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.

K.K. HALL, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that the damages awarded Flannery for loss of enjoyment of life fall within the punitive damage proscription of the FTCA. Nor can I agree that the award for lost future earnings is punitive or otherwise improper because of the failure to deduct federal income taxes. In my view, these aspects of the damages award are a matter of state law, which have been conclusively resolved in Flannery's favor by the decision of the West Virginia Supreme Court of Appeals in *Flannery v. United States*, W.Va., 297 S.E.2d 433 (1982). I can only conclude that this decision of the West Virginia Supreme Court is binding upon this Court. Finally, I disagree with the majority's conclusion that the award of lost earnings should be reduced on the ground that it partially duplicates the award of future medical expenses. For these reasons, I must vigorously dissent pursuant to the FTCA.

It is undisputed that, as a result of the government's negligence, twenty-two year old Michael Flannery was rendered permanently and totally disabled and, as the district court found, "will remain in a semicomatose state for the remainder of his life." He is not expected to live beyond the year 2008 and this is contingent upon his receipt of constant custodial and good nursing care.

As the majority opinion notes, the only issue on appeal is the calculation of damages. In a personal injury action, such as this one, brought pursuant to the FTCA, damages are a matter controlled by state law. Under the provisions of 28 U.S.C. § 2674, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 1346(b) further provides that:

> Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

When this case first came before us on appeal, we perceived—in my opinion, correctly—that the damages question was a matter of state law, which required clarification from the West Virginia Supreme Court of Appeals. Pursuant to our earlier opinion in this case, *Flannery v. United States*, 649 F.2d 270 (4th Cir.1981), we, therefore, certified the following two questions to the West Virginia Supreme Court of Appeals:

> 1. Under West Virginia law, is a plaintiff in a personal injury action, who has been rendered permanently semicomatose by his injuries and is therefore unable to sense his injuries, entitled to recover for the impairment of his capacity to enjoy life?

> 2. Under West Virginia law, must the trial court, when sitting as the finder of fact in a personal injury action, deduct from the plaintiff's award for lost earning capacity an amount equal to federal income taxes which would have been levied upon such income had it actually been earned?

The answers which we received from the West Virginia Supreme Court of Appeals were as follows:

1. We ... hold that a plaintiff in a personal injury action who has been rendered permanently semi-comatose is entitled to recover for the impairment of his capacity to enjoy life as a measure of the permanency of his injuries even though he may not be able to sense his loss of enjoyment of life. *Flannery v. United States,* W.Va., 297 S.E.2d at 439.

2. [W]e adopt the majority view and hold that in computing the loss of future earning capacity a deduction need not be made for federal income taxes. *Id.* W.Va., 297 S.E.2d at 441.

Under the Rules of Decision statute, 28 U.S.C. § 1652, "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." In my opinion, the decision of the West Virginia Supreme Court in response to our certified questions in this case is unquestionably controlling under the Rules of Decision statute. I, therefore, believe that we are required to affirm the district court's judgment with respect to both the award for loss of enjoyment of life and the loss of future earning capacity. Nor am I persuaded by the majority's view that these damages are in any way punitive and, consequently, prohibited under 28 U.S.C. § 2674 of the FTCA, which permits only compensatory damages.

Addressing first the issue of Flannery's entitlement to damages for loss of enjoyment of life, I note that the majority's view of "punitive" prevents Flannery from recovering a component of damages to which he is clearly and unequivocally entitled under West Virginia law. The majority has thus succeeded in creating two conflicting standards for damages awards in West Virginia. In the future, a victim, such as Flannery, who is injured by a private party, will be entitled to recover damages for loss of enjoyment of life, while that same per-son, if injured at the hands of the government will receive nothing. This, I submit, is in direct conflict with the clear meaning and intent of the provisions of 28 U.S.C. § 2674 and 1346(b), which state that the government shall be liable *in the same manner and to the same extent* as a private party and in accordance with the laws of the place where the negligence occurred.

The majority premises its holding that an award to Flannery for loss of enjoyment of life is punitive on the ground that it is of no direct benefit to him. At least one federal appeals court has refused to follow the view that any award of damages over and above a plaintiff's actual loss is "punitive." In *Kalavity v. United States,* 584 F.2d 809 (6th Cir.1978), the Sixth Circuit held that under Ohio law an award of damages in a wrongful death action in favor of decedent's spouse could not be reduced on the ground that the spouse had remarried and received support from her new husband. The court rejected as "farfetched" the government's contention that this award did not compensate the plaintiff for any direct or actually-suffered loss. The Court in *Kalavity* recognized that "[d]amages are 'punitive' when awarded separately for the sole purpose of punishing a tortfeasor who inflicted injuries 'maliciously or wantonly, and with circumstances of contumely or indignity.' *Milwaukee R.R. v. Arms,* 91 U.S. 489, 493, 23 L.Ed. 374 (1875)." *Id.* at 811, n. 1. The Court then went on to note that

the purpose of ordinary tort damages, as distinguished from "punitive" damages, is both to compensate and to deter. Tort law mixes these two purposes, compensation and deterrence, when it awards ordinary damages. Tort law may award as customary damages something more than simply out-of-pocket loss, something for deterrence, without spilling over into "punitive" damages awarded solely for the purpose of punishment... In excluding "punitive" damages from the coverage of the Tort Claims Act, we believe that Congress simply prohibited use of a retributive theory of punishment against the government, not a theory of damages which would exclude all customary dam-

ages awarded under traditional tort law principles which mix theories of compensation and deterrence together. [Footnote omitted] *Id.* at 811.

I completely agree with this common-sense approach to the meaning of "punitive" under the FTCA and would, accordingly, find the damages awarded to Flannery for loss of enjoyment of life entirely outside the scope of the FTCA's prohibition of punitive damages.

Similarly, I see nothing which would require the district court to deduct an amount for federal income taxes from Flannery's award for lost future earnings. The majority recognizes that even those cases which have held that such a deduction is required were cases in which the decedents in wrongful death actions were high wage earners with annual incomes in excess of $30,000.00. Flannery, whose future wages were calculated on the basis of a $17,481 per year income in 1978, hardly falls in that category. Nor do I subscribe to the majority's implicit holding that this issue is governed by any principle of federal common law applicable to admiralty, worker's compensation, or Federal Employers Liability Act cases. As stated previously, I view the issue of damages entirely as a matter of state law. In West Virginia a deduction for federal income taxes from an award of lost future earnings "need not be made." *Flannery v. United States,* W.Va., 297 S.E.2d at 441.[1]

Finally, I am unpersuaded by the majority's belief that the award for lost future earnings duplicates in part the award of future medical expenses. In FTCA cases, which are tried without a jury, factual determinations, including damages, are governed by the clearly erroneous standard of review. *United States v. Pendergrast,* 241 F.2d 687, 689 (4th Cir.1957); Fed.R.Civ.P. 52(a). In such cases, we will judge a trial court's finding as to damages to be clearly erroneous only if, after reviewing the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see also Ferrero v. United States,* 603 F.2d 510, 521 (5th Cir.1979). The government in this case has not even argued that there has been any duplication in the two components of the damages award which comprise loss of future earnings and future medical expenses. Under West Virginia law, Flannery, as a personal injury plaintiff, is entitled to damages both for his lost earning capacity and for his future medical expenses. On the record before us, I am unable to conclude that the amounts awarded by the district court for these components of Flannery's damages are clearly erroneous.

For the foregoing reasons, I would affirm the district court's judgment.

---

**1.** The 10% deduction suggested by the government and adopted by the majority is arbitrary and without evidence to support it. I also find the majority's approach on the issues of taxes inconsistent and illogical. On the one hand, the majority insists on a deduction for future taxes, but refuses any upward adjustment for income taxes payable by Flannery on post-judgment income from invested funds. The basis for the latter view is the majority's purely speculative theory that all of the income could be invested in tax-exempt securities.