**Shirley M. MOLZOF, as personal representative of the Estate of Robert E. Molzof, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 89–2960.

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1990.

Decided Aug. 30, 1990.

Daniel A. Rottier, Habush, Habush & Davis, Madison, Wis., for plaintiff-appellant.

Richard D. Humphrey, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for defendant-appellee.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Shirley Molzof, as personal representative of the estate of Robert Molzof, appeals from that portion of the judgment of the district court denying her an award under the Federal Tort Claims Act (Act) 28 U.S.C. §§ 2671–2680 for her husband's future medical expenses and for his loss of enjoyment of life.[1] Because we agree that these damages fall within the scope of the punitive damage exception to the Act's waiver of sovereign immunity, we affirm the district court's denial of this award as noncompensable.

## I. BACKGROUND

On October 31, 1986 Robert Molzof underwent surgery at the William S. Middleton Memorial Veterans Hospital in Madison, Wisconsin to remove the upper right lobe of his lung. As part of his post-operative care, Molzof was temporarily placed on a ventilator. Thereafter, due to the conceded negligence of hospital employees, the alarm system on his ventilator was disconnected. While so detached, the tube providing life sustaining oxygen was also disconnected. When these disconnections were discovered eight minutes later, Mol-zof's heart feebly beat at between 30–40 beats per minute and he was not breathing. By the time a physician arrived, Molzof was in complete cardiac arrest. Since he was not resuscitated until nearly a half an hour later, he suffered anoxic encephalopathy. In layman's term, his brain was irreversibly damaged due to oxygen deprivation. This damage left Molzof in a permanent vegetative state requiring a ventilator for breathing and a nasogastric tube for nutrition and hydration. Responding only to pain and tracheal stimulation, Mr. Molzof was intellectually dead.

Shirley Molzof sued the United States under the Federal Tort Claims Act for the damages she and her husband incurred as a result of its employees' negligence. Since the United States admitted liability, the case proceeded to a bench trial solely on the issue of damages.

After studying Molzof's medical records and considering extensive testimony from three expert medical witnesses which revealed a history of excessive alcohol and tobacco abuse, a diabetic condition, an ongoing inflammation of the liver, a former cancer, a former pancreatic condition, and a pulsating, discolored mass in his right inguinal area, Judge Shabaz predicted the plaintiff's life expectancy to be three years from the date of trial. The court further found that the care currently provided to Molzof free of charge by the Veteran's hospital was reasonable and adequate.[2] In addition, the court concluded that the plaintiff's wife, Shirley, was, with few exceptions, satisfied with those services and had no present intention to transfer him from the Veterans hospital to a private facility. Finally, since there was no indication that the level of care at neighboring hospitals would equal that provided at the Veterans hospital, the court concluded that it was in

---

1. Robert Molzof's claim was originally brought by his guardian ad litem Thomas H. Geyer. After the entry of final judgment but before the filing of the notice of appeal, Robert Molzof died. Accordingly, pursuant to Rule 43 of the Federal Rules of Appellate Procedure, the parties filed a stipulation with this court substituting Shirley Molzof as personal representative of the estate of Robert E. Molzof.

2. Pursuant to 38 U.S.C. § 610 a veteran with a service-connected disability is entitled to receive free medical care from the Veterans Administration. Since Robert Molzof had a service-connected disability the government had a pre-existing duty to provide him with free medical care.

the plaintiff's best interest to remain at the Veterans hospital. Based on these findings, the court ordered the continuation of the same level of care by the Veterans hospital and awarded damages to Robert Molzof in the amount of $75,750 for future medical expenses. This award paid for physical therapy, respiratory therapy and full-time doctor visits deemed necessary to supplement the care he received at the Veterans Hospital. Since Mr. Molzof's chronic comatose condition precluded him from even being cognizant of any damage award, the court denied damages for his loss of enjoyment of life. The plaintiffs appeal seeking damages for Molzof's future medical expenses and his loss of enjoyment of life.[3]

## II. DISCUSSION

Prior to the enactment of the Federal Tort Claims Act, the doctrine of sovereign immunity, a shield protecting the government from liability for torts committed by its employees, was abrogable only by a private bill in Congress. *Dalehite v. United States*, 346 U.S. 15, 24–25, 73 S.Ct. 956, 962, 97 L.Ed. 1427 (1953). In 1946, however, "feeling that the Government should assume the obligation to pay damages for the misfeasance of employees carrying out its work," *Id.*, and recognizing the "notoriously clumsy" nature of the private bill device, *Id.*, Congress lowered this shield, and accepted liability as respondeat superior for injuries caused by the negligent or wrongful conduct of its employees. 28 U.S.C. § 1346(b), *Laird v. Nelms*, 406 U.S. 797, 805, 92 S.Ct. 1899, 1903, 32 L.Ed.2d 499 (1972).

■ This immunity waiver is not, however, without qualification or exception. While the Act broadly holds the Government liable under state law "to the same extent as a private individual under like circumstances," in the same breath it bars awards of punitive damages. 28 U.S.C. § 2674. Indeed, in a separate section the

Act excludes all claims arising from the intentional misconduct of Government employees. 28 U.S.C. § 2680(h). Thus, measuring damages under the Act involves a two-prong process. To ascertain liability and measure damage, a federal court is directed to apply the state law governing the situs of the Government's wrongful act or omission.[4] The court thereafter applies federal law to determine if any part of the award is barred as punitive. *Flannery v. United States*, 718 F.2d 108, 110 (4th Cir. 1983), Comment at 251–52.

### A. *Future Medical Expenses*

■ While the district court determined that Molzof established with sufficient certainty under Wisconsin law his need for future medical care and the cost thereof, it denied as punitive any amount in excess of the $75,750 award supplementing the ordered care provided by the Veterans Hospital. In so ruling, the court reasoned that since there was no showing that a private facility would provide the plaintiff with care of similar or superior quality to that provided by the Veterans Hospital, no indication that a transfer would be in the best interest of the patient, and no expression of dissatisfaction or intention of Mrs. Molzof to transfer her husband to another institution, ordered care at the Veterans Hospital was held to be the only appropriate remedy. Since "[i]t would seem incongruous at first glance that the United States should have to pay in tort for hospital expenses it had already paid," *Brooks v. United States*, 337 U.S. 49, 53, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the court deemed a monetary award for the value of medical services already provided by the VA at no charge to the plaintiff to be a double recovery whose effect would be punitive. We agree with both this reasoning and result.

Since it is well settled that the purpose of the Act is compensation, the majority of circuits define "punitive damages" under the Act as any damages in excess of those

---

3. Shirley Molzof was awarded $150,000 for past and future loss of consortium. The sufficiency of this amount is not challenged on appeal.

4. 28 U.S.C. § 1346(b), *See*, Comment, *Defining Punitive Damages Under the Federal Tort Claims Act*, 53 U.Cin.L.Rev. 251 (1984).

necessary to compensate the victim or his survivors for the pecuniary loss suffered by reason of the tort. Comment at 258. Whether or not an award carries with it the deterrent and punishing attributes typically associated with the word "punitive", to the extent that an award gives more than the actual loss suffered by the claimant it is punitive and nonrecoverable. *Flannery v. United States*, 718 F.2d 108, 111 (4th Cir. 1983). *Accord, D'Ambra v. United States*, 481 F.2d 14, 16 (1st Cir.1973); *Hartz v. United States*, 415 F.2d 259, 260 (5th Cir. 1969); *Felder v. United States*, 543 F.2d 657, 660 (9th Cir.1976) *but see, Kalavity v. United States*, 584 F.2d 809, 811 (6th Cir. 1978); *Ulrich v. Veterans Administration Hospital*, 853 F.2d 1078 (2nd Cir.1988); *Rufino v. United States*, 829 F.2d 354 (2nd Cir.1987).

■ This does not mean that any award for future medical expenses is limited because as a veteran the plaintiff is entitled to free medical care and hospitalization. *Ulrich v. Veterans Administration Hospital*, 853 F.2d 1078, 1084. Indeed, we agree it would be unreasonable to *obligate* a tort victim to seek continued medical care from the very party whose negligence created his need for such care simply because that party offers it without charge. *Id.*

> The plaintiff may not be satisfied with the public facilities; he may feel that a particular physician is superior; in the future because of over-crowded conditions he may not even be able to receive timely care. These are only a few of many considerations with which an individual may be faced in selecting treatment.

*Feeley v. United States*, 337 F.2d 924, 934 (3rd Cir.1964).

However, where, as in this case, the court determines that the Veterans facility provides the best level of care, that it is not in the plaintiff's best interest to be moved, that the plaintiff's wife is satisfied with the level of care, that she has no present intention to transfer the plaintiff, and that the plaintiff's short life span minimizes the likelihood of changed circumstances, we believe it is more than reasonable for the court to conclude that a $1.3 million award, sought ostensibly for future medical expenses, would more likely be employed to line the plaintiff's, or, more precisely, his relative's pockets.

## B. Loss of Enjoyment of Life

■ While Wisconsin has long permitted the recovery of damages for *"diminished capacity* for enjoying life", *Benson v. Superior Mfg. Co.*, 147 Wis. 20, 132 N.W. 633 (1911), its courts have not indicated whether a comatose plaintiff, with no conscious awareness of his *complete loss* of enjoyment of life, is entitled to recover damages for that loss. Equally unresolved in this circuit is the issue of whether the Federal Tort Claims Act bars as punitive such an award to a comatose patient because the award could provide him with no cognizable benefit. While we remain unguided as to Wisconsin's probable resolution of its tort law issue, we need not blindly divine their law, for we conclude that even if Wisconsin courts recognized the claim for loss of enjoyment of life, in this case it would be barred as punitive under the Federal Tort Claims Act.

In addition to the difficulty normally associated with the resolution of issues of first impression, our inquiry is made even more trying by the articulation of conflicting viewpoints from our cousins in the Second and Fourth circuits. Based on the minority view "that the FTCA's prohibition of punitive damages was designed to prohibit 'use of a retributive theory of punishment against the government,'" *Rufino v. United States*, 829 F.2d 354, 362 (2nd Cir. 1987), *citing Kalavity v. United States*, 584 F.2d 809, 811 (6th Cir.1978), the Second Circuit awarded damages for loss of enjoyment of life to a comatose plaintiff. In so doing the court noted that despite the absence of conscious awareness, "[t]he purpose of a recovery for loss of enjoyment of life is clearly to compensate for that loss." *Id.* Conversely, based on the prevailing view that damages in excess of those necessary to compensate for "injuries suffered by the claimant" are "punitive" whether or not they carry with them "deterrent and

punishing attributes," the Fourth Circuit denied as punitive damages for loss of enjoyment of life to a comatose plaintiff in a condition as lamentable as Mr. Molzof's. *Flannery v. United States,* 718 F.2d 108, 111 (4th Cir.1983). While recognizing the plaintiff's grievous loss, the court reasoned that a monetary award to a plaintiff who is conscious of nothing and incapable of enjoying nothing could scarcely compensate him for his loss. Indeed, since the comatose plaintiff could not even experience the pleasure of giving the money away, the court concluded that such an award could only benefit the plaintiff's unscathed relatives.

Since we believe that the Act excludes damages in excess of those necessary to compensate for injuries suffered by the plaintiff and because we are equally confident that an award of damages for loss of enjoyment of life can in no way recompense, reimburse or otherwise redress a comatose patient's uncognizable loss, we adopt the Fourth Circuit's view and deny the award under the circumstances and findings in this case.

### III. CONCLUSION

Because we hold that the district court did not commit error in concluding in this case that an additional award of damages for future medical expenses and loss of enjoyment of life were properly characterized as "punitive" and hence barred under the Federal Tort Claims Act, the judgment of the district court is

AFFIRMED.