**Martin ALLRED, Plaintiff,**

v.

**MAERSK LINE, LIMITED, Defendant.**

**Civ. A. No. 2:92cv791.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 12, 1993.

Arthur Charles Ermlich, Arthur C. Ermlich, P.C., Virginia Beach, VA, Melvin Jay Radin, Norfolk, VA, for plaintiff.

Richard John Barrett, Walter Bramblette Martin, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, VA, for defendant.

*OPINION AND ORDER*

MORGAN, District Judge.

This matter comes before the Court on motion of Defendant Maersk Line, Limited ("Maersk") for a new trial. The case was tried before a jury on April 22 and 23, 1993. The jury returned a verdict in favor of Plaintiff Martin Allred ("Allred") and awarded him $1,000,000 in damages for injuries he sustained while in the employ of Maersk as a seaman.

## I. BACKGROUND

On November 6, 1990, Allred was a twenty-six year old Coast Guard licensed seaman when he sustained a broken elbow while working aboard a Maersk ship, the PFC WILLIAM B. BAUGH, as it was docked in Saudi Arabia. Allred and the second assistant engineer, Christopher Madden, had been attempting to repair a steam leak in a fitting located on the ceiling of one of the ship's holds. They had been using a large forklift borrowed from the Army (which was operating dockside as part of Operation Desert Storm) to create a working platform near the ceiling. On the day of the accident, the forklift platform was left in the elevated position and an aluminum extension ladder was being used to ascend to and descend from the platform. The foot of the ladder was placed on the metal floor of the hold and the top of the ladder leaned against the uplifted forks approximately 20 feet above.

At some point during the job, Madden was working on the platform when Allred attempted to ascend the ladder. As he neared the top, the ladder slipped and Allred fell to the floor. The testimonies of Madden (by deposition) and Allred were contradictory as to the circumstances surrounding the use of the ladder. Madden had dispatched Allred to retrieve a rope with which he intended to secure the ladder by tying it off to the forklift. Allred did, in fact, retrieve such a rope. It is undisputed that Madden did not tie off the ladder, although it is unclear why. Madden testified by deposition that the rope had been "too long," and that Allred knew the ladder was not secured. Maersk asserted that Allred was negligent for ascending an

unsecured ladder under those circumstances. Allred testified that he was not aware that there was any inadequacy in the rope he had retrieved nor was he aware that the ladder was unsecured.

After the fall, Allred was first treated aboard the hospital ship USNS COMFORT and later by Dr. Thomas Osteen in the United States. Three physicians testified at trial regarding Allred's condition. Dr. Gold stated that the injury to his elbow had resulted in a 20 to 25 percent permanent partial disability of the left arm and he found no degenerative changes. He stated that there was a surgical procedure which might afford Allred some relief from this disability. Dr. Morales estimated the permanent partial disability of the left arm to be 30 percent and stated that he did not believe surgery was indicated. Both doctors Gold and Morales had examined Allred at the request of his attorney. Allred was examined by Dr. Spear at the request of counsel for Maersk. Dr. Spear testified that the disability to the left arm was approximately 20 percent. He went on to describe a surgical procedure whereby Allred could have prosthetic ends placed on the bones of his left forearm. He stated that the improvement from such surgery might reduce the disability rating from 20 to 15 percent if it were successful. He rated the likelihood of success to be between 60 and 70 percent. He explained that, although Allred might not elect to have such surgery now, he might well choose to do so in the future because of the probable degenerative or arthritic changes which he prognosticated would occur in the elbow over time.

Allred also testified as to his physical condition. He stated that he could still perform most functions which he normally undertook before the accident. He was back at work and generally was able to perform the same tasks as before the fall. He indicated, however, that he had some ongoing pain which was exacerbated by heavy lifting, and that he had some difficulty doing work with his arms over his head or extended in front of him because the left forearm would not fully ex-

tend or rotate to a palm-upward position. He stated that he continued to participate in sports, though not performing as well as he had previously. He also demonstrated the difference in extension of his arms by holding both arms over his head together. When he walks or stands, the left arm remains partially bent.

The parties had stipulated that all of Allred's medical bills and disability compensation had been paid by Maersk, and that he had been able to return to work in January of 1991. At the close of the evidence, the jury was instructed to consider two theories of recovery for Allred. The first was based upon Maersk's negligence under the Jones Act, and the second was based upon the common law doctrine of "unseaworthiness" of the vessel and its equipment. During its deliberations, the jury returned to the courtroom and inquired of the Court as to whether it was limited to an award of damages between one and one million dollars or between one and ten million dollars. Upon being instructed that it should be guided by the instructions on damages previously read to them and submitted in writing, the jury retired to complete its deliberations. The jury completed a special verdict form containing interrogatories prepared by the Court and submitted to the jury without objection pursuant to Rule 49(a) of the Federal Rules of Civil Procedure. The jury concluded that (1) Maersk had been negligent and that such negligence was a cause of Allred's injuries; (2) the vessel was unseaworthy in a manner such that the unseaworthiness was a proximate cause of Allred's injuries; (3) Allred himself was not negligent; and (4) Allred's damages were $1,000,000. After the jury was excused, Maersk made a motion for a new trial pursuant to Rule 59.[1] The basis for this motion was that the verdict was erroneous in finding Maersk liable and that the award was excessive. The Court reserved ruling on the motion. Both parties filed briefs and thereafter a hearing was held before the Court upon Maersk's motion on June 4, 1993.

---

1. Maersk also made a Rule 50 motion for judgment as a matter of law. The Court denied this motion from the bench.

## II. STANDARD APPLICABLE TO RULE 59 MOTIONS

 A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

Fed.R.Civ.P. 59(a). Courts have the inherent authority pursuant to this rule to set aside verdicts in order to prevent a miscarriage of justice. *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 892 (4th Cir. 1980). The decision to grant a new trial lies within the discretion of the trial court. *City of Richmond v. Atlantic Co.*, 273 F.2d 902, 916 (4th Cir.1960). Though the underlying basis for a new trial is always "to prevent injustice," there are a number of specific injustices which courts may find in support of granting a Rule 59 motion. These include a prejudicial error of law on the part of the court, a verdict which is against the weight of the evidence, damages awarded which are either too large or too small, or some palpable misconduct which has prejudicially affected the jury. *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2805 (1973).

## III. VERDICT AS TO LIABILITY

On the issue of Maersk's liability for the injuries sustained by Allred, Maersk asserts a number of alleged prejudicial errors made by the Court during trial.

 A. Maersk asserts that the Court admitted evidence of remedial measures in violation of Rule 407 of the Federal Rules of Evidence. The relative credibility of the testimonies of Allred and Christopher Madden was a significant issue in the trial. There was a pretrial dispute as to the taking of Madden's deposition by the defense only a few days before the trial. Plaintiff argued that the deposition should have been taken long before and that there were indications that Madden had been available to the defense at an earlier time. The Court granted the Defendant leave to take the deposition but reserved ruling upon its admissibility. In his deposition, Madden gave detailed testi-

mony to the effect that Allred had been fully aware of the unsecured condition of the ladder—testimony which formed the basis of Maersk's comparative negligence defense.

The Court admitted Madden's deposition testimony at trial as it was directly contradictory to Allred's testimony, but upon motion of Plaintiff's counsel, also admitted a redacted copy of a Coast Guard reporting form which the master of the PFC WILLIAM BAUGH had filled out, with the help of Madden, after investigating the accident. In this report, the master acknowledged that "[a] more solid and stable object is needed so [the ladder] wont [sic] slide on the steel deck." Prior to the admission of the Coast Guard report, the parties entered into a stipulation which was read to the jury and stated that the master:

> ... does not remember what specific questions were posed to Mr. Madden nor the answers received from him. However, [the master] states that since he had knowledge of the fact that the injury was caused by a ladder slipping, his standard procedure would have been to ask if the ladder had been secured and if not, why. [The master] would further state that if told the ladder was not secured and the failure to secure the ladder was due in any part because of the plaintiff's fault or part that would have been recorded.

In light of the stipulation, the Court admitted the report on the theory that it was relevant to the resolution of the issue of credibility.

Rule 407 states that exclusion of evidence of subsequent measures is not required "when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, *or impeachment.*" Fed.R.Evid. 407 (emphasis added). In the present case, the centrality of the facts in dispute as rendered by Madden and Allred, and the tendency of the report to impeach the late-breaking testimony of Madden guided the Court in exercising its discretion to admit such evidence. The Court FINDS that it was not error to admit the redacted report.

 B. Maersk also assigns error in the Court's failure to give a curative instruction

about comments made by Plaintiff's counsel regarding the circumstances surrounding the taking of Madden's deposition. During Madden's deposition and during his closing argument, counsel for Allred explored Maersk's knowledge of, and access to, Madden throughout the pendency of the litigation. Simply stated, Plaintiff impliedly raised the question of whether Madden's testimony had been exaggerated or fabricated after the commencement of this lawsuit.

On the theory that Plaintiff was implying that Maersk's prior contact with the witness was improper, counsel for Maersk requested an instruction from the Court refuting the argument of Plaintiff's attorney. Maersk did not present any written instruction or ask that any specific language be used. The Court denied the request and observed that the parties were at liberty to address the propriety or impropriety of such contact in their closing arguments. Upon reflection, the Court FINDS no error in its refusal to draft and give a formal instruction on this issue.

C. As stated above, a court might also set aside a jury verdict pursuant to Rule 59 upon finding that it was not supported by the weight of the evidence. The Court observes that there was ample evidence upon which a jury could have found for Allred based upon causes of action in Jones Act negligence as well as "unseaworthiness." Furthermore, the jury was free to disregard the contested evidence presented by Maersk on Allred's alleged comparative negligence.

Accordingly, the Court finds no basis upon which to disturb the jury's finding of liability.

## IV. VERDICT AS TO DAMAGES

■ Maersk argues that a new trial should be awarded because the jury based the amount it awarded on sympathy, bias, guesswork or speculation. If the damage award were motivated by some sort of passion or prejudice on the part of the jury, a new trial on damages alone (or a remittitur) would not be available. Where a damage award is the result of passion or prejudice (as opposed to

miscalculation, for instance), the court must grant a new trial on *both* liability and damages. *Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin*, 283 U.S. 520, 521, 51 S.Ct. 501, 502, 75 L.Ed. 1243 (1931) [hereinafter *Moquin* ] (finding the common law limitation on the use of remittitur in actions under the Federal Employer's Liability Act); *Ford Motor Co. v. Mahone*, 205 F.2d 267, 273 (4th Cir.1952). *See also* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2805 (1973). The rationale behind this rule is that if there is reason to conclude that the jury's calculation of damages was substantially affected by emotion, there is also reason to question the jury's underlying assignment of liability. *Moquin*, 283 U.S. at 521, 51 S.Ct. at 502 ("[N]o verdict can be permitted to stand which is found to be in any way the result of appeals to passion and prejudice. Obviously such means may be quite as effective to beget a wholly wrong verdict as to produce an excessive one.").

■ Maersk points to no facts upon which this Court could conclude that passion or prejudice had influenced the jury in arriving at a specific dollar amount. There was no evidence or argument presented during the trial which should have inflamed the jury. For example, Allred had given relatively understated testimony regarding the nature and extent of his physical injuries. In addition, the jury was instructed not to base its verdict upon sympathy, bias or speculation.[2]

During argument, counsel for Allred made reference to the fact that the Plaintiff was seeking $1,000,000 in damages. Although Maersk made no contemporaneous objection or cited any authority upon this issue in its brief in support of its motion, it understandably seized upon this point when the Court discussed the issue. Maersk now contends that the award of $1,000,000 was based upon Plaintiff's counsel mentioning the amount of damages sought. The Court gave the jury detailed verbal and written instructions informing them of the basis upon which they were to arrive at damages should they con-

---

**2.** "In deciding the facts of this case you must not be swayed by sympathy for any party nor bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice, sympathy, bias, guesswork or speculation." Jury Instruction No. 1.

clude that Maersk was liable. The written instructions were available for the jury to read while they deliberated. One of those instructions specifically stated: "The amount sued for is not evidence in this case. You should not consider it in arriving at the amount of your verdict, if any." When the jury returned to the courtroom during deliberations to inquire as to what, if any, limitations were placed on the amount of its award, the question posed asked whether there was a $1,000,000 limit or a $10,000,000 limit. After consultation with counsel, the jury was advised to let the instructions previously provided by the Court be their guide in fixing damages. Furthermore, the very nature of their question suggested that, far from feeling compelled to award $1,000,000 because it was the amount for which the Plaintiff had sued, there was apparently some consideration being given to awarding *more* than that amount. While in retrospect the Court has doubts about the wisdom of permitting any mention of the amount of damages sought in a personal injury case, this Court FINDS that such mention is not a basis for granting any relief to Maersk in this case.

▪ Notwithstanding the foregoing, the Court is gravely disturbed by an award which is excessive in light of the injuries sustained by Allred. Allred suffered no "special damages" since his medical expenses and lost wages were paid by his employer. The remaining elements upon which Plaintiff could recover were:

(1) any bodily injuries he sustained and their effect on his health according to their degree and probable duration;

(2) any physical pain or mental anguish he suffered in the past and any physical pain or mental anguish that he may be reasonably expected to suffer in the future;

(3) any disfigurement or deformity;

(4) any inconvenience caused in the past and any that probably will be caused in the future.

Trial Jury Instruction No. 14.[3]

The damages in the Plaintiff's case can be summarized as follows: He suffered consid-erable fear as he fell approximately twenty feet to the metal floor of the ship's hold. There was undoubtedly substantial pain associated with the initial injury and his transportation, first to the hospital ship and later when he was transferred to the United States for further treatment. There was a two month period of initial recuperation during which his nonwork-related activities were substantially curtailed. After his initial recuperation, he continues to suffer limitation of motion and some pain. His left arm is permanently deformed in that he is unable to extend the forearm at the elbow beyond approximately 135 degrees (fully extended is 180 degrees) and there is restricted rotation of the forearm. When he stands with his arms at his side or over his head there is a difference in appearance. The extent of this permanent partial disability of the left arm is rated at between 20 and 30 percent. As a result of the disability, he may have some difficulty working with his arms over his head and climbing ladders, although he is admittedly able to perform the duties necessary for his continued employment as a merchant seaman. In fact, he is currently attending school to advance his rank. He experiences ongoing low-grade pain which is intensified by heavy lifting. One of the physicians testified that there probably would be continued arthritic degeneration which could lead to greater disability over time and perhaps to surgery.

▪ While this Court regards the evidence as having established a serious injury to Allred, an award of $1,000,000 shocks the conscience of the Court. This Court FINDS that to allow the verdict to stand would constitute a miscarriage of justice. Therefore, the Court must decide what form of relief should be granted. As explained herein, the Court has found no evidence that the jury was influenced by passion or prejudice. The jury was instructed not to be so influenced; there was no apparent error during the con-

---

**3.** Maersk assigns error in the failure of the Court to instruct the jury concerning income taxes on civil damage awards. Since there was no lost wage component in the award in the present case, to instruct the jury on the fact that civil damage awards are not subject to income tax would be surplusage. *See Flannery v. United States,* 718 F.2d 108, 111 (4th Cir.1983); *Sauers v. Alaska Barge,* 600 F.2d 238, 247 (9th Cir. 1979).

duct of the trial; and the verdict as to liability was not against the weight of the evidence. Accordingly, it is not appropriate to grant a new trial on the issue of liability.

■ For similar reasons, the Court does not find that a new trial on damages alone would be the appropriate remedy. The Court finds no merit in the Defendant's argument concerning the refusal of the jury instruction dealing with taxability. Nor, for the reasons previously stated, should a comment by the plaintiff's attorney regarding the amount of the ad damnum be the basis for granting a new trial on damages. In summary, the Court can identify no error or misconduct which, standing alone, would justify a new trial, nor does it appear to the Court that any error or misconduct led to the jury being influenced by passion or prejudice. *Cf. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin*, 283 U.S. 520, 521, 51 S.Ct. 501, 502, 75 L.Ed. 1243 (1931) (court must order a new trial on both liability and damages upon finding that a jury verdict was influenced by passion or prejudice).

We are left then with a verdict the excessiveness of which shocks the conscience of the Court, but without an explanation for such excessiveness. The question from the jury suggests that some jurors may have had an even larger sum in mind. Perhaps our society has desensitized our citizens to the value of money. We read of sums handled by our government which contain more zeros than we can comprehend, our state governments sponsor and advertise lotteries which promise to make us rich overnight, and athletes, financiers, and entertainers are paid more in a year than a successful person can aspire to in a lifetime. Should this Court throw up its hands and simply say that Allred won the game? I think not.

However negligent Maersk may have been, and however unseaworthy its vessel may have been, whatever assets it possesses were earned by the sweat of someone's brow, combined with the wise application of someone's capital resources. This Court should not, and will not, treat the assets which Maersk has accumulated as the proceeds of a lottery to be awarded to the person who draws the winning number. This is a Court of law and not a game show. The amount of the award should compensate Allred for his legitimate complaints as opposed to treating him as the winner of the lottery.

■ It is the award, not Mr. Allred, which the Court criticizes. Mr. Allred appeared to this Court to be thoroughly honest and straightforward, particularly in contrast to the testimony of the only defense witness. The Plaintiff's injuries were clearly defined. The medical testimony of the three physicians was clear, understandable, and remarkably consistent. Accordingly, the Court finds the evidence sufficiently clear to place the Plaintiff on terms and order remittitur. In doing so, it is the duty of the Court to determine the maximum amount which the jury could have reasonably awarded. *Defender Industries, Inc. v. Northwestern Mutual Life Ins. Co.*, 809 F.Supp. 400, 413 (D.S.C.1992). *See also* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2815 (1973). Upon consideration of the initial injury sustained by the Plaintiff, the continuing problems he experiences and the probable future problems he must face, this Court FINDS that $500,000 is the maximum sum that a jury could reasonably have awarded.

Defendant's motion for a new trial as to liability is DENIED. Having found that an award of $1,000,000 to the Plaintiff would constitute a miscarriage of justice, Defendant's motion for a new trial on damages alone is CONDITIONALLY DENIED pending Plaintiff's decision upon whether or not to accept an award of damages in the amount of $500,000. Should Plaintiff not consent to this remittitur, a new trial shall be granted on the issue of damages alone.

The Clerk is REQUESTED to mail a copy of this Order to all parties.

It is so ORDERED.